(Nos. 93615, 93774 cons.

BARBARA SAICHEK, Appellee, v. MALGORZATA
LUPA *et al.* (Malgorzata Lupa, Appellant).

*Opinion filed March 20, 2003.*

Michael Resis and James S. Smith, of O'Hagan, Smith & Amundsen, L.L.C., of Chicago, for appellant.

Robert B. Morton, of Chicago, for appellee.

JUSTICE RARICK delivered the opinion of the court: The sole issue in this appeal is whether a plaintiff who has brought an action against two defendants to recover damages for a single, indivisible set of injuries arising from concurrent but independent acts of negligence may continue with her claim against the first of the defendants after being awarded and paid the full amount of damages she proved following entry of a default judgment in her favor against the second defendant. The circuit court held that she could not and dismissed her claim against the first defendant pursuant

to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 2000)). The appellate court reversed and remanded for further proceedings. 329 Ill. App. 3d 1059. We granted the first defendant's petition for leave to appeal. 177 Ill. 2d R. 315. For the reasons that follow, we now reverse the judgment of the appellate court.

The pertinent facts are not in dispute. In October of 1998, plaintiff, Barbara Saichek, was the passenger in a taxicab operated by Valentin N. Zdunkevich. While the cab was stopped and waiting to make a turn at an intersection in the Village of Northbrook, it was rear-ended by an automobile driven by Margaret Lupa. As a result of the collision, plaintiff suffered severe and permanent personal injuries. In addition, some of her personal property was lost or damaged.

Plaintiff subsequently filed a two-count complaint in the circuit court of Cook County to recover damages from Lupa (count I) and, "in the alternative," from Zdunkevich (count II) based on their alleged negligence. Lupa answered the complaint and participated in the litigation. Zdunkevich did not. After being served with process, Zdunkevich failed to enter an appearance, file pleadings or make any other response to plaintiff's complaint.[1] Plaintiff therefore moved for entry of a default judgment against him pursuant to section 2—1301 of the Code of Civil Procedure (735 ILCS 5/2—1301 (West 2000)). That motion was granted. An order of default was entered in favor of plaintiff and against Zdunkevich, and Zdunkevich was duly notified of the default as required by statute. See 735 ILCS 5/2—1302 (West 2000).

Following entry of the default order, a "prove-up" hearing was held at which plaintiff presented testimony and documentary evidence to substantiate the loss she

---

[1]Although Zdunkevich failed to answer plaintiff's complaint, he ultimately secured counsel and responded to a cross-claim for contribution filed against him by Lupa later in the proceedings.

had suffered. Based on that evidence, the circuit court assessed plaintiff's damages at $40,792. The court thereupon entered judgment in favor of plaintiff and against Zdunkevich in that amount. It also awarded plaintiff her costs.

Once she obtained the default judgment against Zdunkevich, plaintiff initiated nonwage garnishment proceedings against his insurer, American Country Insurance Company (American Country), in accordance with the relevant provisions of the Code of Civil Procedure. See 735 ILCS 5/12—701 *et seq.* (West 2000). American Country appeared and answered, indicating that it provided insurance coverage for Zdunkevich and had no objection to the garnishment. Based on American Country's stipulation, the circuit court entered judgment against the company for $43,681.73, representing the amount of plaintiff's judgment against Zdunkevich in the underlying action plus costs and accrued interest.

American Country paid plaintiff the full amount due. At the company's request, plaintiff, through her attorney, executed a document entitled "Satisfaction Release of Judgment." The document recited that "having received full satisfaction and payment," plaintiff, by her attorney, was releasing the judgment against "only *** Zdunkevich and American Country Insurance." The document further recited that in accordance with section 12—183(h) of the Code of Civil Procedure (735 ILCS 5/12—183(h) (West 2000)), the judgment in favor of plaintiff was vacated and her cause of action dismissed, but "only as to *** Zdunkevich and *** American Country Insurance Co." A parenthetical added that the "cause remains pending as to defendant Malgorzata Lupa."[2]

After that document was executed and filed, Lupa

---

[2]The portion of the document containing this language was set out in the form of an order by the court. The version of the document contained in the record bears a file stamp by the circuit

moved to dismiss plaintiff's complaint against her pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 2000)). As grounds for her motion, Lupa argued that plaintiff had sustained a single, indivisible set of injuries for which there was a single, indivisible set of damages and that plaintiff was therefore entitled to but one opportunity to prove what her damages were. In Lupa's view, plaintiff could have deferred that opportunity until after she had presented her case against Lupa. Instead, she elected to substantiate her damages at the prove-up hearing following Zdunkevich's default. Based on the evidence plaintiff presented at that hearing, the trial court determined that plaintiff's damages amounted to $40,792 and entered judgment for her in that amount. Plaintiff collected the judgment in full, plus interest and costs. Lupa contended that the total amount of damages is not subject to relitigation before a different trier of fact and that plaintiff has therefore already received all that she would ever be entitled to receive. Further litigation would accomplish nothing.

The circuit court agreed. It distinguished this case from situations involving the Joint Tortfeasor Contribution Act (740 ILCS 100/0.01 *et seq.* (West 2000)) where a plaintiff who has settled with one defendant is allowed to proceed to trial against one or more remaining defendants, subject to the nonsettling defendants' right to a setoff for the amount of the settlement. Here, there was no settlement. The amounts recovered by plaintiff were the product of a judicial determination. The court held that once plaintiff elected to obtain such a judicial

---

clerk dated March 7, but the signature line for the judge is blank. A different copy of the document is appended to plaintiff's brief. That version does not have a file stamp from the clerk and also lacks a signature by a judge. It does, however, bear a circuit judge's stamp, and its validity has not been challenged.

determination, she could not seek additional amounts in a subsequent proceeding. The damage award assessed by the court at the prove-up hearing served as a cap on the total amount of damages plaintiff could recover. Because plaintiff had accepted payment for the full amount of the judgment, the court held, there was nothing left for her to recover. No uncompensated injuries remained. Accordingly, the court granted Lupa's motion and dismissed plaintiff's claim against her.[3]

The appellate court reversed, relying on *Holman v. Simborg*, 152 Ill. App. 3d 453 (1987). In *Holman*, the plaintiff had filed a two-count complaint to recover damages for injuries he sustained while working on the roof of a building owned and managed by defendants. Count I sounded in negligence. Count II asserted a claim under the Structural Work Act (Ill. Rev. Stat. 1985, ch. 48, par. 60 *et seq.*) At trial, the court directed a verdict for defendants on the Structural Work Act claim. The negligence count, however, proceeded to trial before a jury. The jury found in favor of plaintiff and against defendants on that count. It assessed plaintiff's damages at $116,371, but found that he was 65% at fault and reduced his damages by a corresponding amount to $40,730.

The appellate court subsequently reversed the directed verdict and remanded for a new trial on the Structural Work Act claim. In so doing, it specified that damages were fixed at the $116,371 amount awarded by the jury. Prior to the new trial, plaintiff accepted payment of $40,730 plus interest in satisfaction of the judgment on the negligence claim, a sum which corresponded

---

[3]Although the contribution claims between Lupa and Zdunkevich remained pending, the circuit court made an express written finding pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)) that there was no just reason for delaying enforcement or appeal.

to the amount he would have received after application of the reduction based on his comparative fault. The trial court issued an order releasing the original judgment against defendants. The matter then proceeded to trial on the Structural Work Act claim. At that trial, plaintiff prevailed on the Structural Work Act cause of action and was awarded $75,641, the difference between the original jury verdict of $116,371 and the $40,730 which defendants had previously paid to plaintiff.

The judgment for plaintiff triggered a second appeal, this time by defendants. Defendants argued that the payment they made on the negligence claim satisfied all claims plaintiff could assert against them based on the injury at issue in the case, including her Structural Work Act claim. Accordingly, they argued that plaintiff should not have been permitted to obtain a second judgment after retrial on the Structural Work Act count.

In rejecting defendants' argument, the appellate court focused on what the parties had intended when defendants offered and plaintiff accepted the $40,730 payment prior to the retrial. Viewing the language used in the circuit court's order of satisfaction and release in light of the circumstances existing at the time of the transaction, the court concluded that plaintiff's acceptance of the initial $40,730 payment was not intended to serve as full satisfaction of plaintiff's injury claim. Accordingly, it affirmed the judgment of the circuit court.

The appellate court in the case before us found this precedent to be decisive. Following the approach taken in *Holman*, it looked to the intention of the parties. The court observed that the "Satisfaction Release of Judgment" executed by plaintiff following entry of judgment in her favor in the garnishment proceedings stated that it pertained only to the judgment against Zdunkevich and his insurer and that "the cause remains pending as to defendant *** Lupa." Comparing the situation to *Hol-*

*man*, the court held that the qualifying language contained in the "Satisfaction Release of Judgment" when considered

> "in light of the parties' knowledge that plaintiff's claim alleged one count of negligence against Lupa and one count of negligence against Zdunkevich, demonstrates that plaintiff did not intend for the $40,792 payment to constitute full satisfaction of her injury claim." 329 Ill. App. 3d at 1062.

Finding no evidence in the record that would support a contrary view of plaintiff's intent, the appellate court concluded that the "Satisfaction Release of Judgment" executed by plaintiff does not bar her from pursuing her claim against Lupa. The appellate court further held, based on principles applicable to settlements involving joint tortfeasors, that any recovery obtained by plaintiff from Lupa would be reduced by the amount plaintiff was awarded on her claim against Zdunkevich, thereby eliminating "the possibility that plaintiff will recover double damages for her injury." 329 Ill. App. 3d at 1063. The appellate court therefore reversed the circuit court's judgment and remanded the cause for further proceedings.

We granted Lupa's petition for leave to appeal, and the matter is now before us for review. In undertaking that review, we begin by reiterating that the matter arose in the context of an order by the circuit court granting Lupa's motion to dismiss pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 2000)). The questions a court must consider where a section 2—619 dismissal is challenged on appeal are whether a genuine issue of material fact exists and whether the defendant is entitled to judgment as a matter of law. *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 389 (2001). Our review of a dismissal under section 2—619 is *de novo*. *Arteman v. Clinton Community Unit School District No. 15*, 198 Ill. 2d 475, 479 (2002).

In assailing the appellate court's disposition of this case, Lupa first argues that the court should not have relied on *Holman*. We agree. At issue in *Holman* was how an accord and satisfaction entered with respect to one claim in a lawsuit affected a second claim in the suit involving the same set of parties. An accord and satisfaction is a contractual method of discharging a debt or claim. To constitute an accord and satisfaction there must be: (1) a *bona fide* dispute, (2) an unliquidated sum, (3) consideration, (4) a shared and mutual intent to compromise the claim, and (5) execution of the agreement. See *Solomon v. American National Bank & Trust Co.*, 243 Ill. App. 3d 132, 134 (1993) The "accord" itself is the actual agreement between the parties while the "satisfaction" is its execution or performance. See *Fremarek v. John Hancock Mutual Life Insurance Co.*, 272 Ill. App. 3d 1067, 1071 (1995). It is grounded in contract law. See *Emrick v. First National Bank of Jonesboro*, 324 Ill. App. 3d 1109, 1116 (2001). Because of this contractual nature, the intent of the parties is of central importance. See *Solomon v. American National Bank & Trust Co.*, 243 Ill. App. 3d at 134-35. That is why the focus in *Holman* was on the parties' intent.

This case is similar to *Holman* in that the plaintiff in each case advanced two different claims and received payment for the first claim before litigation on the second was complete. In marked distinction to *Holman*, however, the claims in the case before us are not asserted against the same defendants. Each of the two counts of plaintiff's complaint seeks recovery from a different defendant. The defendants are independent of one another. Lupa, the second defendant, played no role in the litigation between plaintiff and Zdunkevich, the first defendant, and the liability of the two defendants is premised on separate acts or omissions.

Because of the differences between the parties

involved in counts I and II, resolution of this case cannot turn on the parties' intentions as it did in *Holman*. Whatever plaintiff and Zdunkevich may have intended when Zdunkevich paid and plaintiff accepted full payment of the judgment entered against Zdunkevich on count I, those intentions are not binding on Lupa. Lupa could not be said to have agreed to the transaction between Zdunkevich and plaintiff because she was not a party to it. The only way to reach a contrary result would be by holding that plaintiff's intentions when she concluded her litigation against Zdunkevich could somehow be imputed to Lupa. Given that the parties are independent of one another and that plaintiff's causes of action are distinct, such a holding would have no basis in the law. As the *Holman* court correctly noted, "accord and satisfaction" requires a *shared and mutual* intent to compromise the claim. No such mutuality is present with respect to Lupa.

The doctrine of accord and satisfaction is inapplicable to this case for another reason as well. Accord and satisfaction presuppose that the parties disputed the amount due but agreed to give and accept something other than that which they thought was due in order to settle a claim. See *Collection Professionals, Inc. v. Logan*, 296 Ill. App. 3d 959, 963 (1998). No such disagreement or compromise were present here. The "Satisfaction Release of Judgment" signed by Zdunkevich and plaintiff was executed in the nonwage garnishment proceedings filed after Zdunkevich's default in plaintiff's personal injury action. When that document was signed, there was no dispute regarding the amount Zdunkevich owed. The judgment amount was specific and certain, and plaintiff did not have to accept less than that sum. The "Satisfaction Release of Judgment" recited that plaintiff received full payment. That she did, in fact, receive payment of the judgment in full is conceded.

As a general rule, obtaining judgment against one person liable for a loss does not bar the plaintiff from prosecuting claims against any other person who may also be liable for that loss. See, *e.g.*, Restatement (Second) of Judgments § 49 (1982); 74 Am. Jur. 2d *Torts* § 74 (2001). The initial judgment, however, will normally serve as a limit on the plaintiff's entitlement to redress. See, *e.g.*, *Bodam v. City of Chicago*, 241 Ill. App. 3d 937, 941 (1993) (where a plaintiff has been awarded damages in a lawsuit against one tortfeasor and then seeks to hold a second tortfeasor liable for the same injury in a subsequent action, the plaintiff is not permitted to recover an amount of damages greater than that awarded in the first suit). The reason is straightforward. Once the amount of the loss has been judicially determined and a valid and final judgment has been entered, a plaintiff may not relitigate the question of her damages in a subsequent proceeding. See Restatement (Second) of Judgments § 50, Comment *d* (1982).

In the case before us, the amount of damages sustained by plaintiff was determined by the court following a hearing. The judgment was final, and its validity was unquestioned. Based on the judgment, plaintiff brought nonwage garnishment proceedings, which resulted in her obtaining the full amount of damages awarded by the court, plus interest and costs. Because the judgment has now been satisfied, and because plaintiff is precluded from relitigating the question of her damages, she has already received all that she is entitled to receive for the injuries that gave rise to this litigation. That being so, plaintiff no longer has an enforceable claim. Restatement (Second) of Torts § 886, Comment *b* (1979). She is barred from further action against anyone else who is liable for the same damages. W. Keeton, Prosser & Keeton on Torts § 48, at 330 (5th ed. 1984).

The situation is analogous to the one present in *Laver*

*v. Kingston*, 11 Ill. App. 2d 323 (1956), where a motorist was struck and injured by a truck owned by Archer-Daniel-Midland Company (ADM). The motorist sued ADM in federal court based on the negligence of the company's truck driver and was awarded a judgment of $7,500, which ADM payed, along with the motorist's costs of suit. After the judgment was satisfied, the motorist attempted to obtain additional damages by suing the driver of the truck in state circuit court. On the truck driver's motion, the circuit court dismissed and the motorist appealed.

In undertaking its review, the appellate court noted that while a different defendant was named in the state-court proceeding, the two lawsuits arose from a single accident and involved a single injury. The basis for liability, the injuries sustained by the motorist, and the compensation due the motorist were identical in the two actions. When the federal court entered its judgment, it settled all of those issues. Because "there can be only one compensation for one wrong," and because the amount awarded by the federal court had been paid in full and the judgment satisfied, the appellate court ruled that the plaintiff was barred from further suit. *Laver*, 11 Ill. App. 2d at 329. "To hold otherwise," held the court, "would be to promote litigation *** [and] permit a plaintiff to recover twice for one injury." *Laver*, 11 Ill. App. 2d at 329. Accordingly, dismissal of the motorist's complaint was affirmed.

Plaintiff resists such a result in this case by arguing that the judgment entered by the circuit court following the prove-up hearing on her damages should not be deemed a complete and dispositive adjudication of the full measure of her loss. According to plaintiff, the judgment was based on informal proceedings rather than "actual litigation" and was intended as only partial compensation for her injuries. This argument is unten-

able. The award of damages based on the matters presented at the prove-up hearing was part of the default proceeding which plaintiff elected to pursue. Judgments by default have the same validity and force as those rendered upon a trial of the issues. See *Menconi v. Davison*, 80 Ill. App. 2d 1, 6 (1967). Accordingly, plaintiff cannot assert that the issue of her damages was not actually litigated.

Although we have no record of what transpired during the prove-up hearing, we fail to see how that proceeding could have been anything other than beneficial for plaintiff. Just as there was no adversarial challenge on the question of liability, plaintiff was apparently relieved of any significant adversarial challenge to the elements of damages for which she sought compensation. Without an adversarial challenge by Zdunkevich or his insurer, plaintiff's claims avoided the same level of scrutiny to which they would otherwise have been subject. Spared such scrutiny, plaintiff was free to present any element of damages she could claim in good faith. She had no reason to make less than a full and complete presentation of her damage claims, and she never explains what additional damages she hopes to collect from Lupa that she was unable to get from Zdunkevich or his insurance company.

In that regard, we note again that this case does not present a situation where some of the plaintiff's injuries can be attributed to one tortfeasor while others can be traced to a different tortfeasor. The accident that gave rise to this litigation inflicted a single set of injuries on plaintiff for which she sustained a single, indivisible set of damages. Under such circumstances, allowing plaintiff's action against Lupa to go forward would require us to hold that plaintiff is entitled to seek and recover different amounts of damages based on the very same theory of recovery for the very same injuries in the very

same accident. That would be impermissible. Should plaintiff prevail, the judgments would be inconsistent. Given the facts of this case, there is no way, legally or logically, that a higher damage award against Lupa could be squared with the damage award already entered against Zdunkevich and paid by his insurer.

Allowing plaintiff to proceed against Lupa cannot be justified on the grounds that Lupa's culpability might be greater than Zdunkevich's. Apportionment of liability for plaintiff's damages will be resolved in the contribution action which remains pending between those parties. Whatever the outcome of that proceeding, it will not affect the question of plaintiff's entitlement to damages. The relative culpability of the defendants for an injury and the damages plaintiff sustained as a result of that injury are entirely separate issues.

Illinois adheres to the single recovery principle. That principle holds that there may not be more than one recovery of damages for a single, indivisible injury. Where a plaintiff has sustained such an injury, as the plaintiff in this case did, the plaintiff may not divide up her claim and bring successive proceedings to obtain additional damages. Having once been awarded damages for the injuries by the court, she cannot seek compensation for those injuries again. That is so "regardless of whether or not the plaintiff has recovered all that he or she might have recovered" in the initial proceeding. *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 502 (2002).

Because a plaintiff cannot sue for part of his claim in one action and then seek recovery for the remainder of his claim in another (See *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 340 (1996)), all of a plaintiff's damages must be presented and considered at once, when the matter is first litigated at trial (see *Dillon*, 199 Ill. 2d at 502). When the plaintiff in the case before us presented her damage claims to the circuit court following Zdunkev-

ich's default, she was therefore required to put forward all of the damages for which she sought compensation. That includes prospective damages as well as damages that had already accrued. *Dillon*, 199 Ill. 2d at 502.

Such a result is not inequitable. The court did not require plaintiff to proceed as she did. As Lupa has argued, plaintiff could have waited to present her damage claims until she went to trial against Lupa. The decision to reject that course was plaintiff's alone. She is the one who elected to go forward with the immediate prosecution and collection of her claims for damages. Having requested an adjudication of her damages claims and then having received and accepted the full amount of damages she sought, plaintiff will not be heard to complain that the damages she received were in some way inadequate or incomplete. The law precludes plaintiff from recovering more. Because plaintiff would not be entitled to a further award of damages from Lupa even if Lupa were found liable, an essential element of plaintiff's negligence claim against Lupa is absent. *Bodam v. City of Chicago*, 241 Ill. App. 3d at 941. The circuit court was therefore correct in granting Lupa's motion to dismiss.

For the foregoing reasons, the judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*