INSURANCE COMPANY OF NORTH AMERICA *et al.*, Plaintiffs-Appellees, v. CAPE INDUSTRIES, LIMITED, *et al.*, Defendants (Dorothy Sumey, Adm'r of the Estate of Jim Sumey, Deceased, *et al.*, Defendants-Appellants).

Fourth District   No. 4—85—0200

Opinion filed November 13, 1985.

James Walker, Ltd., of Bloomington, for appellants.

Stephen L. Corn and Gregory C. Ray, both of Craig & Craig, of Mattoon, for appellees.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On June 5, 1981, plaintiffs, Insurance Company of North America (INA) and INA of Illinois, brought suit in the circuit court of McLean County against defendants, Cape Industries, Ltd. (Cape), North American Asbestos Corporation (NAAC), St. Paul Fire & Marine Insurance Company (St. Paul), and Dorothy Sumey *et al.*, seeking a declaration that policies of liability insurance issued by plaintiffs wherein NAAC was the named insured, provided no coverage or protection for defendant (Cape). St. Paul was alleged to have issued a policy giving liability coverage to NAAC over and above the limits of the INA policies. The other defendants, Sumey *et al.*, are persons, or personal representatives of persons (1) who were allegedly injured or killed as a result of exposure to asbestos sold by Cape while acting as an "agent and stockholder" of NAAC, and (2) who have filed suits at law against Cape for damages resulting from that exposure.

In count I, plaintiffs contended that by the terms of the policies, no coverage was extended to Cape. Count II asserted that Cape had breached the terms of the INA policies by failing to cooperate with plaintiffs in the defense of the suits brought by Sumey *et al.* On November 7, 1984, plaintiffs filed a motion for summary judgment as to count II. The motion stated that in companion litigation in which plaintiffs here were plaintiffs and Cape a defendant, findings had been made that Cape had refused to cooperate with plaintiffs "in the defense of personal injury actions pending in McLean County, Illinois, against Cape." The motion further set forth that more than 30 days had elapsed since the entry of judgments making those findings final and that neither a post-hearing motion nor a notice of appeal had been filed. The motion contended that, accordingly, (1) Cape, NAAC, and St.

Paul were collaterally estopped in the instant case to deny that Cape and NAAC were each in "breach of its duty to cooperate with these Plaintiffs," and (2) because Sumey *et al.* had no "better rights" to recovery by garnishment under the policies than Cape or NAAC had for coverage under the policies, they were also estopped from any prospective rights to garnish the policies.

Defendants Sumey *et al.* responded to the motion for summary judgment by contending that no collateral estoppel was operative as to them because (1) they were not parties to the cited cases, and (2) those cases involved cooperation by Cape as to claims concerning acts of commission or omission by Cape which were different than those causing the injuries for which they had brought suit.

After a hearing on the motion for summary judgment, the circuit court entered an order on March 12, 1985, determining:

    1. Cape, NAAC, and St. Paul were collaterally estopped from claiming coverage;

    2. the rights of the other defendants were dependent on those of the rights of Cape and NAAC and were "thus estopped as well"; and

    3. the foregoing ruling rendered moot the issues of count I.

The purport of the order was to dismiss as to defendant Retha McCandless, administrator, over whom that court had no jurisdiction, and to grant plaintiffs the declaratory relief sought as to other defendants.

Defendants Sumey *et al.* have appealed. Plaintiffs have moved to dismiss the appeal on the grounds that they have made payment on claims to the full extent of the policy limits, thus mooting any significance to the declaration on appeal. We deny the motion to dismiss, and reverse the summary judgment as to count II. We remand with directions that count I be reinstated.

■■ Plaintiffs are in a somewhat awkward and unusual posture in having obtained a declaratory judgment and now asking that the appeal be dismissed as moot. Granting their request would allow the declaration, which they contend to be insignificant, to stand. In order to effectively defend against the motion, defendants Sumey *et al.* would have to conduct a substantial investigation. Any evidentiary hearing on the question would be one that can better be handled in the trial court. Considering all the foregoing matters and our determination that the summary judgment was erroneous, we determine the best procedure to be to deny the motion.

If plaintiffs wish to do so, they may raise the issue of mootness because of exhaustion of policy limits in the trial court on remand. The trial court would be in a better position to hear that question than we

are. Furthermore, the case would be in a more appropriate posture for consideration of that issue because there would then be no existing declaratory judgment. A declaration of mootness here would permit a declaratory judgment to stand without those desiring to challenge its propriety having an opportunity to do so.

We now proceed to the merits of the appeal from the summary judgment. As is well known, summary judgments may be entered only if the "pleadings, depositions and admissions on file, together with" any affidavits show as a matter of law that the moving party is entitled to judgment. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005(c).) The only factual matters shown here in accordance with the foregoing are (1) the uncontested allegations of the motion for summary judgment that in "companion litigation" the circuit court of McLean County had made a binding determination that, in regard to other claims against Cape wherein plaintiffs were alleged to have liability insurance coverage, Cape had failed to cooperate with plaintiffs, and (2) the portions of the response of defendants Sumey *et al.* in which they stated that they were not parties to the foregoing cases and that those cases involved other acts of commission or omission by Cape.

■ The motion for summary judgment requested that the trial court take judicial notice of the judgments containing the findings relied on for estoppel. The record does not indicate whether the trial court did take judicial notice of its records in those cases. Under a supreme court decision of the past decade, a court may now take judicial notice of its own records. (*People v. Davis* (1976), 65 Ill. 2d 157, 357 N.E.2d 792.) However, the *Davis* court noted that documents were submitted to the court in order to satisfy the court of the validity of the judgment of which judicial notice was taken. Here, the record does not indicate that such documents were presented to the trial court, and we have no way of knowing what those records showed.

■ The documents supporting a summary judgment are, by the nature of the relevant documents, part of the common law record. The defendants Sumey *et al.*, as appellants, had the responsibility to present a complete record. (*Griffiths v. Griffiths* (1984), 127 Ill. App. 3d 126, 130, 468 N.E.2d 482, 485.) It would appear that responsibility was discharged by the presentation of a record certified by the clerk of the trial court as being a complete common law record. However, in *Blakemore v. Panas* (1985), 131 Ill. App. 3d 748, 476 N.E.2d 441, the Third District of this court held that where, as here, a trial court is requested in a motion for summary judgment to take judicial notice of a prior case in that court for purposes of *res judicata* or collateral estoppel, the appellant is required to present the necessary record in

order to rebut a presumption that the court took judicial notice of that record and that the record supported the judgment on appeal.

We do not agree with the holding in *Blakemore*, particularly under the circumstances there and here, where the record does not show whether the court took judicial notice. However, our decision is not dependent upon a rejection of *Blakemore*. The plaintiffs agree that defendants Sumey *et al.* were not parties to the cases cited in the motion for summary judgment. We conclude that unless those defendants were parties to those proceedings, they are not estopped to contend that plaintiffs have no policy defense as against them.

■■ We recognize that when a plaintiff has obtained a judgment against a tortfeasor, a liability insurer whose policy covered the conduct of the tortfeasor may defend and bar a garnishment action brought against it by establishing a policy defense such as the failure of the tortfeasor to cooperate. The reason for this is that the rights of the judgment creditor against the insurer are no better than those of the tortfeasor. (*Schneider v. Autoist Mutual Insurance Co.* (1931), 346 Ill. 137, 178 N.E. 466; *Burkart v. Toraason* (1982), 107 Ill. App. 3d 92, 437 N.E.2d 388.) We are also aware that ordinarily, when a determination necessary to a judgment on the merits which has become final has been made, that determination is binding on the parties and those in privity with them. (*Johnson v. Nationwide Business Forms, Inc.* (1981), 103 Ill. App. 3d 631, 431 N.E.2d 1096; *American Buyers Club of Danville, Illinois, Inc. v. Belmont Marketing, Inc.* (1981), 95 Ill. App. 3d 330, 420 N.E.2d 207.) However, no case has been called to our attention where, as here, a determination of an avoidance of a policy of liability insurance was made in a case where the insured and the insurer were parties and that determination was held to estop a stranger to that case from garnishing the insurance carrier upon obtaining a judgment against the insured.

■■ Although there is no direct Illinois authority concerning application of the doctrine of collateral estoppel in cases such as this, analogy to other Illinois decisions indicates that estoppel does not apply. Rather, a rule has developed that the judgment creditor of an insured tortfeasor has a right to be heard before being bound by a determination that a policy defense absolves the insurer of responsibility.

In *M.F.A. Mutual Insurance Co. v. Cheek* (1975), 34 Ill. App. 3d 209, 340 N.E.2d 331, an automobile insurance carrier brought suit against its insured and persons who had filed suit against the insured. The carrier requested a declaratory judgment avoiding the policy for lack of cooperation by the insured. The insured was defaulted. The insurer contended that the default of the insured operated to avoid the

policy and cut off any rights of the party suing the insured. The trial court rejected the claim, as did the appellate court. The latter stated, "An accident victim must be given a chance to litigate the question of the validity of a liability insurance policy before his interest in the insurance can be terminated. [Citations.]" (34 Ill. App. 3d 209, 212, 340 N.E.2d 331, 334.) The supreme court agreed that the default against the insured and the termination of his rights did not terminate the rights of the injured party. (*M.F.A. Mutual Insurance Co. v. Cheek* (1977), 66 Ill. 2d 492, 363 N.E.2d 809.) In *Reagor v. Travelers Insurance Co.* (1980), 92 Ill. App. 3d 99, 415 N.E.2d 512, the court held that a party having brought suit against an alleged tortfeasor had standing to seek a declaration as to the validity of the alleged tortfeasor's liability insurance policy. The court cited *M.F.A Mutual* as setting forth the public policy of giving a tort plaintiff the independent right to be a party to litigation that would determine his right to garnish the insurer.

■ The aforementioned cases indicate or hold that a liability insurance carrier cannot cut off the rights of a third person who has filed suit against the insured merely by obtaining a judgment against the insured declaring that a policy defense is operative and then use that judgment to collaterally estop the third party. Logic requires that the insurer not be permitted to accomplish the same purpose indirectly, as here, by obtaining a judgment in another case involving other policy claims and to which the third party was not a party and then use that judgment to collaterally estop the third party in a subsequent declaratory judgment action. This would be so even if the conduct of the insured giving rise to the policy defense in the first case was the very conduct at issue in the case where the estoppel is sought to be applied.

To permit collateral estoppel to operate against defendants Sumey *et al.* on this record would establish a dangerous precedent. We hold that the relationship between the defaulting defendant Cape and the aforesaid defendants was not such as to impose upon them an estoppel operative as to Cape or NAAC.

We need not consider other contentions of the defendants Sumey *et al.* We reverse the summary judgment and remand to the circuit court of McLean County for further proceedings. Upon remand, that court shall reinstate count I which is no longer moot.

Reversed and remanded with directions.

McCULLOUGH and TRAPP, JJ., concur.